# In the United States Court of Federal Claims

No. 22-344C

(Filed: August 23, 2023)

|  | ) |
|---|---|
| **MARCUS E. LEWIS,** | ) |
|  | ) |
| *Plaintiff*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **THE UNITED STATES,** | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

*Richard Voytas*, Voytas Law, LLC, Saint Louis, MO, for Plaintiff.

*Anne Delmare*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Claudia Burke*, Assistant Director.

## ORDER

**SOLOMSON**, **Judge.**

In attempting "to recover the remainder of . . . [life insurance] benefits" allegedly owed, ECF No. 1 ("Compl.") ¶ 3, Plaintiff's initial complaint for breach of contract inexplicably ignores the bedrock principle that "federal employee benefits and pay are governed by statute, not by contract." *Doe v. United States*, 513 F.3d 1348, 1359 (Fed. Cir. 2008) (citing *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004)).[1] In response to the government's motion to dismiss for lack of jurisdiction, Plaintiff does not even attempt to defend his initial complaint; instead, he seeks leave to file an amended complaint, arguing that the new complaint moots the government's motion to dismiss.

---

[1] *See also Griffin v. Sec'y of Health & Hum. Servs.*, 124 Fed. Cl. 101, 106 (2014) ("Federal government employees are governed by Title V of the United States Code. As the courts have explained in a variety of contexts, federal workers' rights are defined by Title V and not by contract, the common law, or other statutes not specifically made applicable to federal workers." (citing Federal Circuit precedents)).

The government's motion to dismiss the initial complaint is correct. But while some parts of the amended complaint suffer from similar defects as the initial complaint, the amended complaint contains a narrow set of allegations sufficient to survive dismissal.

## I.   FACTUAL BACKGROUND[2]

Plaintiff, Marcus E. Lewis, is the sole beneficiary of the lump-sum life insurance benefits for which his step-father, Roy Freeman, had paid as a government employee. Compl. ¶¶ 7, 14; ECF No. 14-1 (proposed amended complaint, or "Prop. Am. Compl.") ¶¶ 8, 16. Mr. Freeman retired from the United States Postal Service ("USPS") and, in 2020, passed away. Compl. ¶¶ 7, 15–16; Prop. Am. Compl. ¶¶ 8, 17, 32.

As a USPS employee, Mr. Freeman elected several lump-sum life insurance benefits through the Federal Employees Group Life Insurance Program ("FEGLI"). Compl. ¶ 8; Prop. Am. Compl. ¶ 9. These included, as of 2018: (1) Basic Life Insurance with a payout of $64,000, Compl. ¶ 10; Prop. Am. Compl. ¶ 10; (2) an "Option A benefit" with a payout of $10,000, Compl. ¶ 11; Prop. Am. Compl. ¶ 11; and (3) an "Option B benefit" with a payout of $124,000, Compl. ¶ 12; Prop. Am. Compl. ¶ 12. Plaintiff claims that, at all times before Mr. Freeman's death, Mr. Freeman satisfied the conditions for receiving these three distinct FEGLI life insurance benefits. Compl. ¶ 13; Prop. Am. Compl. ¶ 15. Office of Personnel Management ("OPM" or "USOPM") documentation seems to indicate that, when Mr. Freeman retired, he elected to continue Basic Life Insurance and an Option A benefit (at a "75% Reduction") but not an Option B benefit. ECF No. 7-1 at 5 (filed by Defendant).[3] Plaintiff "reviewed this [OPM] documentation carefully, and disputes that it originated from" Mr. Freeman. Prop. Am. Compl. ¶ 32.

Separate from the FEGLI benefits, Mr. Freeman paid for a Federal Employee Retirement System ("FERS") annuity with a 2018 lump-sum value of $64,061.53; he began receiving annuity payments before his death. Compl. ¶¶ 8–9, 15; Prop. Am. Compl. ¶¶ 13–14. Plaintiff estimates that the remaining, unpaid value of Mr. Freeman's FERS benefit was approximately $38,000. Compl. ¶¶ 9, 15, 17; Prop. Am. Compl. ¶ 14.

Following Mr. Freeman's death, Plaintiff followed OPM's instructions for collecting Mr. Freeman's life insurance benefits. Compl. ¶¶ 18–19; Prop. Am. Compl.

---

[2] As explained in more detail *infra*, this decision assumes that the factual allegations in the complaint and proposed amended complaint are true for the purposes of resolving the government's motion to dismiss and whether the Court should grant Plaintiff leave to file his amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 678 (2009); *Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51, 63 (2017) (citing cases).

[3] The Court does *not* assume the truth of this document for the purpose of resolving the government's pending motion to dismiss or Plaintiff's motion for leave to file an amended complaint.

¶¶ 19–20. On or about January 2021, Plaintiff received a payment of $77,063.04. Compl. ¶ 20 (describing the payment as "under the Basic benefit"); Prop. Am. Compl. ¶ 21 (alleging that "Plaintiff did not receive an explanation for how [OPM] calculated $77,063.04"). Plaintiff proceeded to contact OPM for information about the life insurance payouts he expected to receive. Compl. ¶¶ 22–24; Prop. Am. Compl. ¶¶ 26–28. OPM sent Plaintiff an additional $915.21 payment. Compl. ¶ 25 (asserting this payment "did not contain any explanation for how the amount was calculated or under what benefit it came from"); Prop. Am. Compl. ¶ 29. Plaintiff sent OPM another inquiry on October 18, 2021, regarding the benefits, but he received no response. Compl. ¶¶ 28–29; Prop. Am. Compl. ¶¶ 30–31.

## II. PROCEDURAL BACKGROUND

On March 30, 2022, Mr. Lewis filed his complaint in this Court against OPM specifically. *See* Compl. The only claim in Mr. Lewis's complaint is that OPM breached an alleged contract "to provide Mr. Freeman with retirement benefits and life insurance benefits." Compl. ¶ 31; *see id.* ¶¶ 30–44. The requested relief includes Plaintiff's estimated value of Mr. Freeman's unpaid benefits ($158,123.44), Plaintiff's "costs incurred herein," and pre- and post-judgment interest. Compl. at 6.

On August 1, 2022, the government filed a motion to dismiss Mr. Lewis's claim for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). ECF No. 7 ("MTD"). Defendant argues this Court lacks jurisdiction to decide Mr. Lewis's complaint because: (1) the federal government's duties pursuant to FEGLI do not include *payment* of life insurance benefits, *see* MTD at 5; (2) the federal government does not contract with federal employees for FEGLI benefits and thus was never in privity of contract with Mr. Freeman (or Mr. Lewis), *see* MTD at 5–7 (describing how employees contract with an insurance carrier); and (3) this Court lacks jurisdiction to decide claims for FERS benefits, *see* MTD at 8–9.[4]

On January 19, 2023, Mr. Lewis filed a response to the government's motion to dismiss and a cross-motion to amend his complaint. ECF No. 14. Mr. Lewis's proposed amended complaint "account[s] for additional information learned" since he initiated this case. *Id.* at 1. In light of the proposed amended complaint, Plaintiff argues the Court should deny the government's motion to dismiss as moot. *Id.* at 2.

---

[4] As noted *supra*, Defendant's motion to dismiss included OPM documents that appear to refute Plaintiff's claims about the benefits Mr. Freeman elected and paid for. *See* MTD at 3 (describing Mr. Freeman's election of benefits as reflected in the included OPM documentation, ECF No. 7-1 at 5). Those documents go to an issue this Court cannot reach at this stage of the litigation: the merits of Plaintiff's claim, generally. Contrary to the government's argument, MTD at 1 n.1, and unlike a contract claim, *see* RCFC 9(k), the complaints at issue here cannot be read to incorporate the OPM documents by reference, nor are the OPM documents' meaning or significance self-evident.

Plaintiff attached his proposed amended complaint to his response and cross-motion. In that proposed amended complaint, Mr. Lewis raises two counts. Count I alleges that the government violated the "FEGLI act" in at least one of the following ways:

> a. USOPM failed to accurately and correctly process [Mr. Freeman's] retirement paperwork, causing the loss of insurance benefits;
>
> b. USOPM failed to cause the issuance of the insurance contract relevant to the Basic benefit;
>
> c. USPOM [sic] failed to cause the issuance of the insurance contract relevant to Option A; and
>
> d. USOPM failed to cause the issuance of the insurance contract relevant to Option B.

Prop. Am. Compl. ¶ 36; *id.* ¶ 33 (referring to the "Federal Employees' Group Life Insurance ('FEGLI') Act" without citing here or elsewhere any specific statutory provision). As with the initial complaint, the basis for this proposed claim is the alleged discrepancy between the amount Plaintiff received and the amount he believes he should have received based on the benefits for which Mr. Freeman allegedly paid. Prop. Am. Compl. ¶¶ 10–12, 37–47 (describing Plaintiff's damages calculation and alleging OPM has not explained its own FEGLI payout calculations).

Count II of Plaintiff's proposed amended complaint claims that OPM "has a statutory obligation to pay all benefits due and owing under the FERS program" and that OPM "has failed to meet" this obligation. Prop. Am. Compl. ¶¶ 50–51 (citing 5 U.S.C. § 8341(a)). The claim's entire factual basis is also the previously alleged payout discrepancy. Prop. Am. Compl. ¶ 49. In total, Plaintiff's proposed amended complaint seeks damages "in excess of" $158,000 plus costs and interest — similar to what Plaintiff requested in his original complaint. *See* Prop. Am. Compl. at 6–7.

On February 2, 2023, the government responded to Plaintiff's motion to amend his complaint. ECF No. 15 ("Def. Resp.").[5] There, the government argued "that leave to amend should be denied when amendment would be futile." *Id.* at 4 (citing cases). In response to Plaintiff's revised claim that OPM failed to facilitate the payments due and owed pursuant to a FEGLI policy, the government argues that "Mr. Lewis is unable to identify the contract that was elected by Mr. Freeman and never issued" and instead "offers conclusory allegations that are unsupported by factual allegations and cannot withstand a motion to dismiss." *Id.* at 7; *see also id.* at 8 (citing *Ashcroft v. Iqbal*, 556 U.S.

---

[5] Because Plaintiff's response to the government's motion to dismiss was the motion to amend, the Court treats the government's response to the motion to amend as a reply in support of the government's motion to dismiss.

662, 677–78 (2009), amongst other cases, and suggesting that Mr. Lewis sue the insurance carrier for any unpaid amount). In response to Plaintiff's new FERS-specific claim, the government repeats its argument from the motion to dismiss that this Court's jurisdiction does not include FERS-related claims. *Id.* at 9 ("Congress has made clear that claimants must first seek review from OPM, then from the [Merit Systems Protection Board ("MSPB")], and finally from the Court of Appeals for the Federal Circuit." (citing 5 U.S.C. §§ 8461(c), (e)(1), 5 U.S.C. § 7703(b)(1), and 28 U.S.C. § 1295(a)(9))).[6]

On February 9, 2023, Mr. Lewis filed a reply in support of his motion to amend his complaint. ECF No. 16 ("Pl. Rep."). There, he asserts that he "simply wants to know through discovery the information that he has been unable to otherwise obtain and, if that information shows he is entitled to additional payment, he would like to be paid what he is owed." *Id.* at 1. Based on the information the government provided during this litigation, Plaintiff located additional documents that "formed the basis for his good-faith belief that [OPM] failed to cause . . . the issuance of the proper insurance policies pursuant to the FEGLI act." *Id.* at 2–3 (citing 5 U.S.C. § 8701 *et seq.*). This led to the "specific allegations regarding the United States' liability" in Count I of the proposed amended complaint. *Id.* at 3. With respect to Count II of the proposed amended complaint, Mr. Lewis recognizes "the United States may ultimately be correct" that the dispute process is outside this Court's jurisdiction, but he argues OPM has stonewalled his ability to use the prescribed process by failing to issue an appealable decision. *Id.*

## III.    STANDARD OF REVIEW

### A. Jurisdiction

The crisscrossing briefs now before the Court began with the government's motion to dismiss Mr. Lewis's claim for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Besides the jurisdictional challenge the government has raised, this Court has an independent duty to ensure that it has jurisdiction over any asserted claim. *See St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992–93 (2019); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Regardless of how a plaintiff characterizes a claim, this Court "look[s] to the true nature of the action in determining the existence or not of jurisdiction." *Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006) (quoting *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994)). To the extent parties dispute any jurisdictional facts, "[i]t is well-established that the plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence." *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). Moreover, "'threadbare recitals of the elements of

---

[6] Although Defendant clearly meant to cite 28 U.S.C. § 1295(a)(9) as reflected above, Defendant mistakenly cited 5 U.S.C. § 1295(a)(9), Def. Resp. at 9, a provision which does not exist.

5

[a claim], supported by mere conclusory statements, do not suffice' to establish jurisdiction." *Perry v. United States*, 149 Fed. Cl. 1, 11 (2020) (alteration in original) (quoting *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018)), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021) (per curiam).  A plaintiff is not entitled to "discovery to learn whether it has a claim at all." *Chemehuevi Indian Tribe v. United States*, 150 Fed. Cl. 181, 200–01 & nn.21–22 (2020) (citing precedents across jurisdictions), *appeal docketed*, No. 21-1366 (Fed. Cir. docketed Dec. 4, 2020).[7]

Generally, "the jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009).[8]  In pertinent part, the Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act thus vests this Court with jurisdiction and waives the sovereign immunity of the United States "[f]or actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions[.]" *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).  That being said, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is

---

[7] *Thales Visionix, Inc. v. United States*, 149 Fed. Cl. 38, 62 (2020) ("Absent jurisdiction over the underlying claims, the discovery of information . . . is improper."); *3rd Eye Surveillance, LLC v. United States*, 2017 WL 2609233, at *2 (Fed. Cl. June 16, 2017) ("[A]s the court does not have jurisdiction over these claims, plaintiffs' discovery of information . . . is improper.").

[8] Although Plaintiff captioned his suit as one against OPM, suits in this Court may only name the United States as the defendant.  RCFC 10(a); 28 U.S.C. § 1491(a)(1).  We treat Plaintiff's suit here as one against the United States and have recaptioned the case, accordingly.  *See Slattery v. United States*, 583 F.3d 800, 827–28 (Fed. Cir. 2009) (reversing this Court's dismissal of a claim against an agency for lack of jurisdiction because, in part, there was "no persuasive reason why the distinction [between the agency acting on behalf of the United States and acting on its own behalf] makes a difference" for jurisdiction (quoting *Auction Co. of Am. v. Fed. Deposit Ins. Corp.*, 132 F.3d 746, 750 n.1 (D.C. Cir. 1997))); *Skillo v. United States*, 68 Fed. Cl. 734, 737 n.6 (2005) (construing claims against federal agencies as against the United States).

cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *see Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

With respect to contracts, "[t]he requirements of a valid contract with the United States are 'mutual intent to contract including an offer and acceptance, consideration, and a [g]overnment representative who had actual authority to bind the [g]overnment." *Greene v. United States*, 2023 WL 5163335, at *2 (Fed. Cir. Aug. 11, 2023) (second and third alterations in original) (quoting *Silver State Land LLC v. United States*, 148 Fed. Cl. 217, 234 (2020)). Failure to allege facts demonstrating each of these elements may support dismissal for lack of jurisdiction pursuant to RCFC 12(b)(1) or for failure to state a claim pursuant to RCFC 12(b)(6). *See Perry*, 149 Fed. Cl. at 18–20 (2020).

A claim for an illegal exaction generally involves money "improperly paid, exacted, or taken from the claimant[.]" *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967). The Federal Circuit's predecessor court — the appellate division of the United States Court of Claims — long ago characterized an illegal exaction as a situation in which "the Government has the citizen's money in its pocket[.]" *Eastport S.S.*, 372 F.2d at 1008 (quoting *Clapp v. United States*, 117 F. Supp. 576, 580 (Ct. Cl. 1954)). In short, an illegal exaction claim under the Tucker Act is "a non-tortious, non-contractual claim for money damages." *Auto Club Ins. Ass'n v. United States*, 103 Fed. Cl. 268, 273–74 (2012); *see also Perry*, 149 Fed. Cl. at 26 ("[T]he Federal Circuit repeatedly has distinguished between money-mandating and illegal exaction claims as distinct categories of Tucker Act causes of action."), *aff'd*, 2021 WL 2935075, at *3 (affirming "trial court's dismissal of [plaintiff's] illegal-exaction claim for lack of jurisdiction and failure to state a claim").

For "money-mandating" claims, a plaintiff must specify a source of law that provides a predicate for this Court's jurisdiction over the claim. *See, e.g.*, *Perry*, 149 Fed. Cl. at 16 ("[Plaintiff] does not rely upon an alleged money-mandating statute or 'point to some statute specifically conferring power upon the trial court to grant his desired relief[.]'" (quoting *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002))). Whether that source of law is a statute or something else (*e.g.*, a constitutional provision or regulation), it creates a right capable of grounding a claim within the Tucker Act's waiver of sovereign immunity if, but only if, it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Mitchell*, 463 U.S. at 217 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)) (internal quotation marks omitted); *see also Main Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). A plaintiff satisfies a money-mandating claim's jurisdictional pleading requirement if the Court "determin[es] that the claim is founded upon a money-mandating source [of law] and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Perry*, 149 Fed. Cl. at 12 (second

alteration in original) (quoting *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008)).

Of specific relevance to this case, 5 U.S.C. § 8715 provides: "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter" — referring to "the Federal Employees Life Insurance program established by the Federal Employees Group Life Insurance Act (FEGLIA), 5 U.S.C. § 8701 *et seq.*" *Devlin v. United States*, 352 F.3d 525, 527 (2d Cir. 2003); *id.* at 544 (describing FEGLIA as "a narrowly drawn, detailed statutory scheme for administering a federal life insurance program"). To what extent FEGLIA provides for a cause of action within this Court's jurisdiction is discussed in more detail below.

### B. Leave to Amend

RCFC 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." RCFC 15(a)(2). With respect to Mr. Lewis's motion to amend, both parties cite the United States Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962). *See* Def. Resp. at 4; Pl. Rep. at 2. In that case, there was no reason to permit an amended complaint where it "would have done no more than state an alternative theory for recovery." *Foman*, 371 U.S. at 182. Although "leave to amend 'shall be freely given' . . . . [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," a court may deny such leave due to the "futility of amendment." *Id.* ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court[.]").[9] Like all of this Court's rules, RCFC 15(a)(2) "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." RCFC 1.

## IV.   DISCUSSION

The Court agrees with the government that this Court lacks subject-matter jurisdiction over Plaintiff's initial complaint. The Court further finds that the proposed amended complaint would also be subject to dismissal — at least in part — for lack of subject-matter jurisdiction or failure to state a claim. Accordingly, the Court permits this

---

[9] *See Marchena v. United States*, 128 Fed. Cl. 326 (2016), *aff'd*, 702 F. App'x 988 (Fed. Cir. 2017) (noting that "the party seeking leave must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion" (quoting *Meyer Grp., Ltd. v. United States*, 115 Fed. Cl. 645, 650 (2014))); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006) (same); *Shoshone Indian Tribe of the Wind River Rsrv. v. United States*, 71 Fed. Cl. 172 (2006) ("Where the proposed amendment would be subject to the same legal defect found by the court to justify dismissal of claims under the original complaint, leave to amend may be denied." (citing Federal Circuit cases)).

case to proceed using Mr. Lewis's amended complaint on a single, narrow set of allegations.

### A. The Court Lacks Jurisdiction over Mr. Lewis's Original Complaint

Aside from Plaintiff's motion to amend the complaint, Plaintiff offered no response to the government's motion to dismiss. *See* ECF No. 14. To be clear, Mr. Lewis's motion to amend does not deny or otherwise challenge the government's motion to dismiss even through conclusory statements. *Id.* The lack of any other argument against the motion to dismiss at a minimum constitutes waiver, and provides this Court with no basis to reject the government's motion (putting aside Plaintiff's motion to amend).

Plaintiff's only claim in his initial complaint is for breach of contract. At the outset, the Court notes that Plaintiff has not alleged facts that, even when assumed to be true, establish any viable contract claim within this Court's jurisdiction. *See Doe*, 513 F.3d at 1355–56, 1359. Moreover, Plaintiff offers, at best, only conclusory allegations about the elements of a contract between his step-father and the federal government. Assertions like "Mr. Freeman elected those benefits and satisfied all prerequisites to be eligible for those benefits," Compl. ¶ 13, are conclusory and do not demonstrate the elements of a contract claim against the government, *see Greene*, 2023 WL 5163335, at *2.

At a minimum, the Court concludes that it lacks jurisdiction over any contract claim in Plaintiff's initial complaint; in the alternative, Plaintiff fails to state such a claim as a matter of law. *See Perry*, 2021 WL 2935075, at *3 (affirming trial court's jurisdictional dismissal because "[plaintiff] makes no factual allegations that there was a meeting of the minds between himself and the agency" and holding, in the alternative, that "because [plaintiff] failed to allege facts sufficient to demonstrate that he and the United States had a mutual intent to contract, that the parties exchanged any offer and acceptance, or that there was any government official with actual authority to bind the United States in contract, . . . the trial court also correctly dismissed this claim for failure to state a claim upon which relief could be granted").

In any event, FEGLI regulations — which Plaintiff has neither cited nor discussed in his complaint, proposed amended complaint, or response to Defendant's motion — distinguish between, on the one hand, a claim that the government failed to pay a FEGLI benefit and, on the other hand, a claim that the government violated its statutory duty to facilitate an insurance contract's issuance (or any other, related statutory duty). As the regulations governing FEGLI make clear, the United States does not assume responsibility for ensuring an insurance policy is paid:

> Basic, Option A, Option B, and Option C benefits are payable according to a contract with the company or companies that issue a policy under § 8709 of title 5, United States Code. *Any*

> *court action to obtain money due from this insurance policy must be taken against the company that issues the policy.*

5 C.F.R. § 870.102 (emphasis added); *see also* 5 U.S.C. § 8709(a) ("The Office of Personnel Management[] . . . *may purchase from one or more life insurance companies* a policy or policies of group life and accidental death and dismemberment insurance to provide the benefits specified in this chapter." (emphasis added)).

Thus, for example, this Court has dismissed a case for lack of jurisdiction where a plaintiff alleged FEGLI benefits were paid to the wrong beneficiary. *Champlin v. United States*, 2021 WL 6690147, at *2–3 (Fed. Cl. Nov. 22, 2021) (discussing 5 U.S.C. § 8709, 5 C.F.R. § 870.102, and case law), *aff'd*, 2023 WL 2847503 (Fed. Cir. Apr. 10, 2023). This Court explained that "[b]ecause plaintiff seeks to obtain money due from a FEGLI insurance policy, her claim does not allege a breach of legal duty owed by the United States." *Id.* (citing *Jacobs v. United States*, 794 F. Supp. 509 (S.D.N.Y 1992)). Our appellate court, the United States Court of Appeals for the Federal Circuit, affirmed that conclusion, explaining that "[t]he government's duties under the [FEGLI] statute are limited[;] . . . . [i]t is the private insurer's duty to issue the FEGLI insurance policy and to provide proceeds under the insurance policy." *Champlin*, 2023 WL 2847503, at *3 (first citing 5 U.S.C. §§ 8709(a), 8716(a), 8714(c)(2); and then citing 5 C.F.R. § 870.102). The government's duties simply "do not extend to claims for proceeds due under a FEGLI policy," so allegations that a plaintiff was due insurance proceeds could not establish that the United States had breached a duty. *Id.* (citing *Barnes v. United States*, 307 F.2d 655, 657–58 (D.C. Cir. 1962)); *see also Walker v. United States*, 161 Ct. Cl. 792, 799 (1963) (holding that an insurance "policy does not create a contract between the Government and the employee" (citing cases)).

In sum, Plaintiff cannot maintain a claim against the United States for FEGLI policy benefits that a private insurance company allegedly did not pay. Notably, Plaintiff does *not* claim in his initial complaint that the government owes money pursuant to a money-mandating provision of law, and Plaintiff does *not* claim that the government must return some sum under an illegal exaction theory (*e.g.*, that Mr. Freeman paid for a policy the government failed to purchase). To the extent Plaintiff *does* "allege a breach of legal duty owed by the United States[,]" *Champlin*, 2021 WL 6690147, at *3, the complaint contains only vague, and patently insufficient, conclusions of law.[10]

---

[10] *See Perry*, 2021 WL 2935075, at *3 ("As his complaint failed to provide any specificity regarding the collection or handling of his funds by the [government], the trial court determined both that it lacked jurisdiction and that his complaint failed to state a claim. As [plaintiff] does not point us to anywhere in his complaint where he makes these relevant factual assertions, we agree with the trial court that it lacks jurisdiction to hear the claim and that [plaintiff] failed to state a claim upon which relief may be granted.").

Like the FEGLI claim, the FERS claim is devoid of any references to statutory or regulatory provisions.  Compl. ¶¶ 1, 6, 8–9, 21, 26, 36, 41–44.  And, even if FERS-related statutes and regulations contain money mandating provisions of law, this Court nevertheless lacks jurisdiction over such FERS claims.  *See* 5 U.S.C. §§ 8401–80; *McGhee v. United States*, 155 Fed. Cl. 380, 386 (2021) ("'[B]y statute, the authority to decide a FERS application in the first instance and adjudicate all claims arising under that retirement system rests with [OPM].' . . . Moreover, the 'jurisdiction to review any potential miscalculation by OPM lies with the MSPB, and not the Court of Federal Claims.'" (quoting *Stekelman v. United States*, 752 F. App'x 1008, 1010–11 (Fed. Cir. 2018) (citing 5 U.S.C. §§ 8461(c), (e)(1), and *Miller v. Off. of Pers. Mgmt.*, 449 F.3d 1374, 1377 (Fed. Cir. 2006)))).[11]  Thus, for example, 5 U.S.C. § 8461(e) provides: "an administrative action or order affecting the rights or interests of an individual . . . [pursuant to FERS] may be appealed to the [MSPB] under procedures prescribed by the Board."  *Id.* § 8461(e)(1); *see also* 5 C.F.R. § 1201.3(a)(2) (describing the MSPB's jurisdiction as including claims pursuant to § 8461(e)(1)).

Finally, Plaintiff's initial complaint refers to 28 U.S.C. § 2675(a).  *See* Compl. ¶ 37.  That statute is located within Chapter 171 (of Title 28 of the United States Code), and that chapter covers "Tort Claims Procedure."  To the extent Plaintiff views his claim as sounding in tort, this Court plainly lacks jurisdiction.  28 U.S.C. § 1491(a)(1) (no jurisdiction over claims "sounding in tort"); *see also Perry*, 2021 WL 2935075, at *4 ("[T]ort claims . . . are not within the jurisdiction of the Court of Federal Claims[.]").

In sum, this Court lacks jurisdiction over Plaintiff's initial complaint.  Additionally, to the extent the proposed amended complaint seeks damages for breach of an insurance contract, for a tort, or for FERS benefits, the Court lacks jurisdiction over the proposed amended complaint, too.  The Court notes once again that Plaintiff offered no response whatsoever to the government's motion to dismiss aside from seeking leave to file an amended complaint.  The Court next turns to that request.

---

[11] *See also El v. United States*, 730 F. App'x 928, 929 (Fed. Cir. 2018) (per curiam) (concluding that a dispute over OPM's calculation of an annuity is "within the purview of OPM, subject to review by the [MSPB] and then this [appellate] court" (applying 5 U.S.C. §§ 8347(b), 8461(c)); *McGhee v. United States*, 2022 WL 1023806, at *2 (Fed. Cir. Apr. 6, 2022) (concluding that "under the governing statutes, jurisdiction for . . . FERS claims lies beyond the Court of Federal Claims"), *cert. denied*, 143 S. Ct. 447 (2022).

### B. The Court Grants Plaintiff's Motion to Amend His Complaint Only with Respect to the Federal Government's Limited Duty to Ensure the Issuance of the Proper Insurance Contract

Mr. Lewis's proposed amended complaint separates his claims between the alleged violation of the government's putative FEGLI obligation (Count I) and the alleged violation of the government's putative FERS obligation (Count II). *See* Prop. Am. Compl. ¶¶ 34–48 (Count I, referencing the "FEGLI Act" but providing no citation to any specific statutory or regulatory provision); *id.* ¶¶ 49–51 (Count II, citing 5 U.S.C. § 8341(a) as the basis of the putative FERS obligation).

The Court addresses the two counts in reverse order because the FERS-related claim in Count II may be disposed of in brief: this Court lacks jurisdiction to decide it. As explained above, jurisdiction for Mr. Lewis's FERS claim lies elsewhere. The proposed amended complaint cites 5 U.S.C. § 8341(a) as the basis for OPM's "statutory obligation to pay all benefits due and owing under the FERS program." Prop. Am. Compl. ¶ 50. That specific section is not money-mandating but rather lists definitions about beneficiaries. *See* 5 U.S.C. § 8341(a).[12] And, even if it were money-mandating, a claim for FERS benefits belongs before the MSPB. *See supra* Section IV.A.

Count I, in contrast, presents a far more complex question. On the one hand, Plaintiff's failure to point to a specific money-mandating statute or other provision of law is arguably fatal under basic Tucker Act jurisdictional principles. *Mitchell*, 463 U.S. at 217. On the other hand, the proposed amended complaint revises the focus of Plaintiff's FEGLI claim. Whereas the initial complaint asserts "Plaintiff is still owed" the claimed amount after OPM "denied his benefits," Compl. ¶¶ 41–42, the proposed amended complaint avers that OPM failed in its obligation "to cause the issuance of the insurance contract[s] in the proper amount pursuant to the FEGLI Act," Prop. Am. Compl. ¶ 35 (internal quotes omitted). In other words, instead of directly seeking money due from a FEGLI insurance policy, Mr. Lewis's proposed amended complaint now claims that OPM "failed to accurately and correctly process" insurance paperwork and/or "failed to cause the issuance of the insurance contract[s]." Prop. Am. Compl. ¶ 36(a)–(d). These related claims arguably are within this Court's jurisdiction pursuant to 5 U.S.C. § 8715.

The Court hedges with the word "arguably" because both binding and persuasive precedents are not entirely clear regarding the scope of the waiver of sovereign immunity in 5 U.S.C. § 8715 or whether that provision recognizes, at least implicitly, some cause of action based on FEGLIA. There are, perhaps, several possibilities: (a) 5 U.S.C. § 8715 permits some sort of FEGLI-related claim in this Court independent of the Tucker Act;

---

[12] *See also* 5 U.S.C. § 8347(d)(1) (describing appeals to the MSPB); 5 U.S.C. §§ 8461(c), (e)(1) (same); *Grover v. Off. of Pers. Mgmt.*, 828 F.3d 1378, 1382 (Fed. Cir. 2016) ("[Plaintiff] appealed to the Board, which had jurisdiction to review OPM's annuity determination under 5 U.S.C. § 8347(d)(1).").

(b) 5 U.S.C. § 8715 adds nothing for this Court's purposes and a plaintiff must still plead a cognizable Tucker Act claim (*i.e.*, a contract with the government, a money-mandating provision of law, or an illegal exaction); or (c) the FEGLI jurisdictional provision and the Tucker Act should be read in conjunction with each other to permit a cause of action based on FEGLIA in this Court.

One decision from this Court's predecessor tribunal, the United States Claims Court, concluded that "the jurisdictional provision of the Federal Employees Group Life Insurance Act, currently codified at 5 U.S.C. § 8715 (1982), neither adds to nor subtracts from the court's Tucker Act jurisdiction." *Robinson v. United States*, 8 Cl. Ct. 343, 345 (1985) (citing *Walker*, 161 Ct. Cl. 792), *aff'd by an equally divided court*, 806 F.2d 249 (Fed. Cir. 1986) (per curiam).[13] In *Robinson*, Judge Wiese explained as follows:

> The court has reviewed the conversion provision of the Act, 5 U.S.C. § 8706(a), the corresponding regulation, 5 C.F.R. § 870.501(e), and also the provisions of the Federal Personnel Manual (FPM), Supplement 870–1, which plaintiff has argued impose a duty upon the United States to provide forms. Assuming, without deciding, that the FPM could be the source of such a duty, neither that document nor the statute and regulation, either together or separately, support the view that the United States could be held answerable in money damages for the breach of such a duty. Moreover, this court historically has been cautious in implying such a right from regulatory legislation. In this instance it would be unwise, absent a much clearer legislative statement, to expose the Government to potential monetary liability for every administrative lapse which might occur in the course of operating a program as large as FEGLI.

*Id.* at 345 (citation omitted) (citing *Eastport S.S.*, 372 F.2d at 1009–10).

*Robinson* thus suggests that, notwithstanding 5 U.S.C. § 8715, a plaintiff must still allege facts supporting a proper Tucker Act claim — *i.e.*, a plaintiff must allege a FEGLI-related contract, money-mandating provision of law, or illegal exaction in order for this

---

[13] The Federal Circuit's *Robinson* affirmance contained no discussion of the issues and, in any event, does not create binding precedent. *See Baker v. Pataki,* 85 F.3d 919, 921 & n.2 (2d Cir. 1996) (per curiam) ("Although the Court is evenly divided on the merits of this appeal, we are unanimously of the view that because of the equal division, the opinions in this case are without precedential effect." (citing, amongst other decisions, *Neil v. Biggers*, 409 U.S. 188, 192 (1972))).

Court to have jurisdiction to decide a FEGLI claim.  That position certainly finds *some* support in *Walker*, a binding Court of Claims decision:[14]

> In passing, it is clear that [5 U.S.C. § 8715] neither adds to nor subtracts from the jurisdiction of this court with respect to claims founded on the life insurance act.  For under the Tucker Act (28 USC § 1491 (1958)), this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  The district courts, on the other hand, have general jurisdiction over any such claim against the United States that does not exceed $10,000 in amount. (28 USC § 1346(b)).  Quite obviously then, the purpose of the jurisdictional provision of the life insurance act — apart from possible clarification — was to remove this $10,000 jurisdictional limitation of the district courts in respect to claims arising under the life insurance act.

*Walker*, 161 Ct. Cl. at 798–99 (citing *Barnes*, 307 F. 2d 655, and discussing legislative history).[15]

But without much, if any, further textual analysis of the relevant provisions, the Court of Claims in *Walker* held that "[i]t is clear . . . that this court by virtue of the Tucker Act *has jurisdiction* of *any claim* against the Government *founded on the life insurance act* or on *any regulation* issued by the Civil Service Commission pursuant thereto." *Walker*, 161 Ct. Cl. at 799 (emphases added).  Reading the Tucker Act and FEGLIA together, *Walker* held that the government is not "totally immune from suit under the insurance act." *Id.* Indeed, *Walker* appears to recognize not only a broad grant of jurisdiction to this Court, but also a broad cause of action for FEGLIA-related claims:  "Viewed in the context of [FEGLIA], it is clear that the Tucker Act vests in this court jurisdiction over *any* claim against the United States for breach of *any obligation owed or undertaken* by it under the life

---

[14] "In *South Corp. v. United States*, 690 F.2d 1368, 1370–71 (Fed. Cir. 1982) (in banc), this court adopted as binding precedent the prior decisions of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals."  *Romane v. Def. Cont. Audit Agency*, 760 F.2d 1286, 1288 (Fed. Cir. 1985).

[15] Of relevance here, and as noted *supra*, the Court of Claims in *Walker* rejected a Tucker Act contract claim based on a FEGLI policy.  *Id.* at 799 (holding that "the group policy does not create a contract between the Government and the employee" and that "for breach of the policy, action lies against the insurance company, not the Government" (citing cases)).

insurance program." *Id.* (emphases added). *Walker* thus concurred with "the Court of Appeals for the District of Columbia . . . that a claim against the Government is cognizable under the life insurance act 'to the extent that . . . (the) claim can be shown to involve some right created by (that) . . . Act and a breach by the Government of some duty with respect thereto.'" *Id.* at 799–800 (all but first alteration in original) (quoting *Barnes*, 307 F.2d at 657–58). This is consistent with the plain terms of 5 U.S.C. § 8715, which assumes that there must exist "a civil action or claim against the United States founded on" FEGLIA, 5 U.S.C. § 8701 *et seq.*

*Robinson*, however, appears to eschew an expansive reading of *Walker* and § 8715, "interpret[ing] the word 'claim' . . . as used in 5 U.S.C. § 8715 to mean a claim for which the recovery of money damages is authorized *by the Life Insurance Act*." *Robinson*, 8 Cl. Ct. at 345 (emphasis added) (dismissing a claim for lack of jurisdiction when the claim's statutory basis could not hold the United States "answerable in money damages"). *Robinson*'s approach, while faithful to some of *Walker*'s phraseology, risks running afoul of "the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, [and] so that no part will be inoperative or superfluous, void or insignificant,'" *Corley v. United States*, 556 U.S. 303, 314 & n.5 (2009) (first alteration in original) (internal quotes omitted) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). In particular, *Robinson* notably does not suggest what, if any, FEGLIA provision *would* support a cause of action in this Court — the existence of which 5 U.S.C. § 8715 quite clearly presumes.

Decisions from other jurisdictions are consistent with a more expansive view of *Walker*'s approach to 5 U.S.C. § 8715. In *Metropolitan Life Insurance Co. v. Atkins*, for example, the United States Court of Appeals for the Fifth Circuit concluded that "[i]t is clear, based on [5 U.S.C.] § 8715, that the United States has consented to be sued for any breach of legal duty owed by it under FEGLIA." 225 F.3d 510, 513 (5th Cir. 2000) (citing *Barnes*, 307 F.2d at 657). There, the Fifth Circuit held that "that the United States, through the personnel clerk, has a duty to maintain the designation of beneficiary forms turned over to its care as a part of its responsibilities under FEGLIA." *Id.* The government urged the Fifth Circuit to follow *Robinson* and to hold "that Congress's directive concerning liability under FEGLIA is not explicit enough to allow recovery of money damages against the United States." *Id.* at 514. The appellate court flatly disagreed: "The 'civil action or claim against the United States founded on [FEGLIA]' contemplated by § 8715 is sufficient to establish Congress's intent to allow suits" for the government's alleged failure to secure and retain complete benefit forms. *Id.* (alteration in original) (quoting 5 U.S.C. § 8715).[16]

---

[16] While the Fifth Circuit specifically addressed the district court's jurisdiction, 5 U.S.C. § 8715 provides that this Court's jurisdiction is coterminous with the district courts for causes of action pursuant to 5 U.S.C. § 8715.

15

In contrast, other cases favor the government by at least limiting the scope of its duty, the breach of which would still support a cause of action pursuant to 5 U.S.C. § 8715. *See Frerichs v. United States*, 2006 WL 200812, at *2 n.3 (N.D. Ill. Jan. 23, 2006) ("Since there is no clear indication from Congress in the FEGLIA that Congress wished to waive the United States' sovereign immunity and create actionable duties, this court joins the courts holding that the United States has no duty to properly receive, maintain, and review benefit election forms." (citing cases across jurisdictions)); *Argent v. Off. of Pers. Mgmt.*, 1997 WL 473975, at *4 (S.D.N.Y. Aug. 20, 1997) ("Neither FEGLIA nor the related administrative regulations impose a duty on the Government to review designation of beneficiary forms for fraud."); *Laporte v. United States*, 2011 WL 3678872, at *5 (S.D.N.Y. Aug. 19, 2011) ("Given the rigorous standard that must be applied in determining whether sovereign immunity has been waived for a given claim, the Court must apply an exacting analysis to determine if any provision in FEGLIA, including regulations promulgated thereunder, creates an actionable duty.").

In yet other cases, the government itself has conceded the general principle that "[c]ase law holds . . . that under [5 U.S.C. § 8715] . . . 'the United States has consented to be sued for any breach of legal duty owed by it under FEGLIA.'" *Hood v. Off. of Pers. Mgmt.*, 2016 WL 4411365, at *5 (W.D. Mich. May 17, 2016) (quoting *Atkins*, 225 F.3d at 513, and noting that "the parties agree"), *report and recommendation adopted*, 2016 WL 4401074 (W.D. Mich. Aug. 18, 2016), *aff'd*, 2017 WL 4124881 (6th Cir. Aug. 10, 2017). In *Hood*, the parties' disagreement centered only "on whether proper maintenance of FEGLI records — including beneficiary designation forms — is a legal duty contemplated by [5 U.S.C. §] 8715, and thus, whether the United States has consented to be sued for Plaintiff's claim that it lost, misfiled, or otherwise misplaced [a] beneficiary form." 2016 WL 4411365, at *5. But again, in *Hood*, even the government agreed that FEGLIA imposes a "legal duty . . . on the United States . . . to ensure that the correct FEGLI policy is negotiated and issued." *Id.* at *6 (listing cases cited by the United States). Similarly, the district court in *Graber v. Metropolitan Life Insurance Co.* agreed that the United States, pursuant to FEGLIA, has a "legal duty . . . to ensure that the correct FEGLI policy is negotiated and issued." 855 F. Supp. 2d 673, 678 (N.D. Ohio 2012); *id.* at 677 (noting the parties' agreement that "the United States has consented to be sued for any breach of legal duty owed by it under FEGLIA" (emphasis omitted) (quoting *Atkins*, 225 F.3d at 513)).[17]

---

[17] *Graber* noted that "[t]he majority of case law supports this interpretation and makes clear that Congress contemplated only limited legal duties under FEGLIA." 855 F. Supp. 2d at 678 (declining "to expand FEGLIA to include the duty to properly maintain beneficiary forms, notwithstanding the Fifth Circuit's decision to do so"); *see also Smith v. United States Census Bureau*, 2021 WL 76967, at *4 (N.D. Iowa Jan. 8, 2021) ("Most courts have held 'that the only legal duty imposed on the United States under FEGLIA is to ensure that the correct . . . policy is negotiated and issued.'" (alteration in original) (quoting *Graber*, 855 F. Supp. 2d at 677)); *Nixon v. United States*, 916 F. Supp. 2d 855, 864 (N.D. Ill. 2013) ("While the Court takes no issue with cases holding that the Government has no duty to ensure that each of its employees has accurately completed

16

Surveying this landscape, this Court concludes that, *at a minimum*, this Court has jurisdiction to consider whether the government "fail[ed] in [its] role to cause the issuance of the insurance contract in the proper amount." *Jacobs v. United States*, 794 F. Supp. 509, 511 (S.D.N.Y. 1992) (citing *Grove v. United States*, 170 F. Supp. 176, 177 (E.D. Va. 1959), and noting that "[t]he United States has given limited consent to suits under the FEGLI Act, 5 U.S.C. § 8701 *et seq.*" and that such "consent is set forth in 5 U.S.C. § 8715"). And that is precisely what Plaintiff alleges in his proposed amended complaint. Prop. Am. Compl. ¶¶ 15, 34–38 (alleging that "[a]t all times relevant, Mr. Freeman . . . satisfied all conditions precedent to be eligible for federal retirement benefits and a federal life insurance plan").

This Court's reading of 5 U.S.C. § 8715 in conjunction with the Tucker Act, in that regard, is consistent with far more recent, and binding, Federal Circuit decisions. For example, in *Lewis v. Merit Systems Protection Board*, the Federal Circuit concluded that 5 U.S.C. § 8715 "has been interpreted to mean that the district courts and the Court of Federal Claims have jurisdiction of 'a claim against the Government . . . under the life insurance act to the extent that [the] claim can be shown to involve some right created by [that] Act and a breach by the Government of some duty with respect thereto.'" 301 F.3d 1352, 1353–54 (Fed. Cir. 2002) (internal quotation marks omitted) (alternations in original) (quoting *Walker*, 161 Ct. Cl. at 800, and citing *Atkins*, 225 at F.3d at 513).[18]

---

their FEGLI forms, or that the forms are otherwise valid when submitted, the Government — as the statutorily designated recipient of the forms — must at least maintain the forms that employees submit to it in a manner that permits the required identification of current beneficiaries set forth in [5 U.S.C.] § 8705."); *but see Shuping ex rel. Sullivan v. United States*, 2022 WL 9949955, at *3 & nn.3–4 (Fed. Cl. Oct. 17, 2022) (concluding the government "does not have a legal duty" to assess the mental capacity of a person changing her FEGLI insurance policy as such an assessment "would essentially enlarge Defendant's role beyond what Congress intended" (citing cases)).

[18] This Court's conclusion here also is consistent with the Federal Circuit's recent, but nonprecedential, decision in *Champlin*: "Under the FEGLIA, '[t]he United States has consented to be sued . . . to the extent that any such civil action or claim can be shown to involve some right created by [the FEGLIA] and a breach by the Government of some duty with respect thereto.'" *Champlin*, 2023 WL 2847503, at *3 (alterations in original) (quoting *Barnes*, 307 F.2d at 657–58, and citing *Atkins*, 225 F.3d at 513, and 5 U.S.C. § 8715). Again, however, that does *not* mean that a plaintiff may sue for the proceeds of a private insurance contract. *See id.* at * 4 (holding that "the United States' duties under the FEGLIA and relevant regulations do not extend to claims for proceeds due under a FEGLI policy" and that "the United States has not waived its sovereign immunity for claims seeking insurance proceeds" (citing *Barnes*, 307 F.2d at 657–58)). On the other hand, another Federal Circuit decision, interpreting *Lewis*, suggests that no Tucker Act claim need be alleged for a proper claim pursuant to 5 U.S.C. § 8715. *See Miller*, 449 F.3d at 1379–81. In *Miller*, the Federal Circuit characterized *Lewis*, 301 F.3d 1352, as *holding* "that an annuitant's challenge to OPM's refusal to permit him to purchase life insurance arose under FEGLIA," and that jurisdiction was proper pursuant to 5 U.S.C. § 8715 in the Court of Federal Claims. *Miller*, 449 F.3d at 1379. But it is difficult to see how such a claim — alleging "breach by OPM of a duty

17

The Court is sympathetic to the government's general *Twombly* point that the facts alleged in the proposed amended complaint are pretty darn thin and conclusory. But the Court is hard pressed to think of another way to allege that Mr. Freeman paid for a benefit that OPM was obligated to provide but that his beneficiary, the Plaintiff here, did not receive. More details would be nice, but they are not required. The crux of Plaintiff's FEGLI claim is that OPM did not meet its duties. This Court has jurisdiction to consider that issue. If OPM *did* meet its duties, however, Plaintiff's remedy lies, if anywhere, against some insurance company (and not the government).

In sum, Plaintiff's motion for leave to file his proposed amended complaint is **GRANTED** with respect to Count I, but otherwise is **DENIED**. The Court further rejects, for lack of jurisdiction, Plaintiff's claims to the extent they may be read to seek damages for breach of an insurance contract or a tort. *See* Prop. Am. Compl. ¶ 38 (referencing "obligations under the agreement"); *id.* ¶¶ 42–43 (referencing 28 U.S.C. ¶ 2675(a)). Plaintiff shall refile the proposed amended complaint limited to the claim that the government breached its duty to cause the issuance of an insurance contract in the proper amount and for which Mr. Freeman allegedly paid.

\* \* \*

The Court offers Plaintiff's counsel a word of caution. Surviving a motion to dismiss via an amended complaint is not an exercise in using a keyboard to invoke magic words to enable the case to proceed to discovery. Put more bluntly, pursuant to RCFC 11, counsel of record must have a good faith basis for any and all assertions of fact or law in a pleading filed with the Court (or made in oral argument).

The Court is *not* prejudging this case in any way, but the Court would be remiss not to point out the obvious. To cut to the chase, the proposed amended complaint asserts that Plaintiff was owed $198,000 in life insurance payments: $64,000 for the Basic benefit, plus $10,000 and $124,000, for the Option A and Option B benefits, respectively. Prop. Am. Compl. ¶¶ 10–12, 18. In response, Plaintiff admits that the government included with its motion to dismiss "some documentation suggesting that Plaintiff's step-father declined some of his benefits at or around the time of his retirement." *Id.* ¶ 32; *see also*

---

to permit [a plaintiff] to purchase additional life insurance" — constitutes a proper, independent Tucker Act claim. *Lewis*, 301 F.3d at 1354. Similarly, the Federal Circuit in *Miller* never explains under what Tucker Act theory of recovery a plaintiff could challenge OPM's "decision as to the scope of [plaintiff's] legal rights under FEGLIA." *Miller*, 449 F.3d at 1379; *see also Parker v. United States*, 196 Ct. Cl. 775, 775 n.\* (1971) (explaining that "the claim in *Walker* arose under the [FEGLIA], which expressly grants jurisdiction over *claims arising under its provisions* to the Court of Claims concurrent with the district courts" (emphasis added)). Accordingly, this Court is uncertain to what extent a plaintiff must identify an independent Tucker Act claim when suing the government pursuant to 5 U.S.C. § 8715 to enforce its FEGLIA obligations.

18

ECF No. 7-1 at 5.  The OPM document appears legitimate and appears to reflect a relinquishment of Option B benefits.  ECF No. 7-1 at 5.[19]

While Plaintiff "disputes" that such documents "originated from his step-father," and asserts "a good faith belief that USOPM has failed in its role to cause the issuance of an insurance contract in the proper amount," Prop. Am. Compl. ¶¶ 32–33, the government will be entitled to take discovery to determine whether those assertions, in fact, have any reasonable basis.  In that regard, a party's allegations of "'[i]nformation and belief' are not magic words that properly can be used to permit a wishful guess." *Doe v. Does 1–10*, 2014 WL 12617343, at *1 (C.D. Cal. Mar. 3, 2014).  Moreover, "allegations . . . made in [a] complaint on 'information and belief,'" may prove to be "a clearly improper locution under the current federal rules, which impose (in the amended Rule 11) a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch."  *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683–84 (7th Cir. 1992); *see also Walker v. Bank of Am. Corp.*, 2019 WL 3766824, at *4 n.4 (D. Md. Aug. 8, 2019)  ("[P]laintiffs may not freely suffuse their pleadings with unsupported allegations simply by qualifying those allegations as having been made 'upon information and belief.'").[20]

## V.   CONCLUSION

The Court agrees with the reasoning of the government's motion to dismiss, and **GRANTS** Plaintiff's motion to amend only with respect to the FEGLI claim as described above.  The Court **DENIES** Plaintiff's motion to amend with respect to other claims, including for FERS benefits, as well as any contract or tort claims, as amendment would be futile.  The Court therefore **GRANTS** Defendant's motion to dismiss for lack of jurisdiction in part; with respect to the above-described FEGLI claim, the motion is **DENIED as MOOT**.

Plaintiff shall file its revised amended complaint, consistent with the instructions *supra,* on or before **Monday, August 28, 2023**.

On or before **Friday, September 1, 2023**, the parties shall meet-and-confer and file a joint status report proposing a schedule for the government to answer the complaint

---

[19] *Riggs Nat. Corp. & Subsidiaries v. Comm'r*, 295 F.3d 16, 20 (D.C. Cir. 2002) ("Common law has long recognized a presumption of regularity for actions and records of public officials." (citing Supreme Court and D.C. Circuit precedent)); *Johnson v. United States*, 125 Fed. Cl. 575, 580 (2016) (holding that plaintiff failed "to overcome the presumption of regularity accorded the records provided to this court by the Army" (citing *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003))), *aff'd*, 675 F. App'x 1011 (Fed. Cir. 2017).

[20] Another consideration is whether Plaintiff would be entitled to anything more than the return of funds paid for an insurance policy that was not provided.  *Cf. Walker*, 161 Ct. Cl. at 800–01 (concluding that government would not be subject to consequential damages).

19

and for a discovery period not to exceed six (6) months given the narrow claim and the limited issue: whether Mr. Freeman paid for an insurance benefit that Plaintiff did not receive because the government failed to meet a statutory duty.  Relatedly, should either party seek to limit the number of depositions or written discovery requests, the Court remains open to any such request that will expedite the resolution of this relatively straightforward matter.  RCFC 1.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge